REGENT STATE BANK, a Corporation, Respondent v. GEORGE GRIMM, Appellant and Jacob Graber, R. F. Graber, J. T. Hundley, Engel & Company, a Corporation; Jacob Krier and Pete Wegesser, Doing Business under the Firm Name and Style of Krier & Wegesser; International Harvester Company, a Corporation; and A. A. Lefor, Respondents and L. J. Omdahl and K. K. Omdahl, Interveners and Respondents.

(159 N. W. 842.)

**Contract — sale of lands — crop-payment plan — vendee — crops — title to.**
Contract construed and held to entitle the vendee in a crop-payment contract to the proceeds of the crop grown in a certain year.

Opinion filed October 5, 1916. Petition for rehearing denied October 24, 1916.

Appeal from the District Court of Hettinger County, *W. C. Crawford,* J.

Action to foreclose a chattel mortgage.

Controversy as to surplus between the mortgagor and his vendor under a crop-payment contract.

Judgment for vendor.

Vendee appeals.

Reversed and modification ordered.

*Charles Simon (Jacobsen & Murray,* of counsel), for appellant.

Where land is sold by one person to another under the crop-payment plan, the vendee becomes the full equitable and beneficial owner, and the vendor simply holds the legal title as security for the purchase price. He is a mortgagee, in effect. The vendee was in possession, under such contract. No relation of landlord and tenant exists. Moen v. Lillestal, 5 N. D. 327, 65 N. W. 694.

And where such contract provides for the giving of a mortgage on the crops, it is a recognition of the right and title of the vendee,—the mortgagor. Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 97, 128 N. W. 690.

*V. H. Crane,* for Hundley, respondent.

The controversy here is between the vendor and vendee. In the case cited, the controversy was between the vendor and the holders of chattel mortgages, and the rule there announced has no application. Moen v. Lillestal, 5 N. D. 327, 65 N. W. 694.

BRUCE, J. Although these proceedings originated in the foreclosure of a chattel mortgage which was given by the defendant Grimm to the plaintiff, the Regent State Bank, the controversy is entirely between the defendants Grimm and Handley. The plaintiff, the Regent State Bank, has, indeed, dropped entirely out of the case, as the record discloses that it has satisfied the mortgage out of other property, and that the grain which is in dispute was by agreement sold by the sheriff and the proceeds held to await the outcome of the action. The decree of the district court, indeed, was not one for the foreclosure of the mortgage, but for the proper distribution of the proceeds of the property, which was sold. The controversy, in short, is over the proceeds of the crop of 1914. It is between the vendor, Handley, and his crop-payment vendee, Grimm, and revolves entirely around the construction of the crop-payment contract which was attached to and made a part of the findings of fact of the trial judge.

The question to be determined is whether, under the terms of the contract, Handley was to receive any of the proceeds of the crops prior to the termination of the year 1914.

A close and careful examination of the original contract leads us to believe that the trial judge erred in his findings and conclusions, and that it was the intention of the parties that the proceeds of all of the crops raised should belong to the vendee, Grimm, up to and including the season of 1914.

The contract as we read it, provides:

That he (Grimm) will deliver to said party of the first part (Handley), or his agent, 80 acres crops each year after the years described

above, 1914, of all crops raised each year at Regent, N. Dak., or such other place as may hereafter be mutually agreed upon.

It is true that a careful scrutiny of the carbon copy of the contract (which was signed as the original and stipulated to be such) is required to make this clear; but on the other hand, no scrutiny, however careful, can arrive at any other reading and properly account for all of the type-written words. The confusion, we believe, is due to the paper slipping in the typewriter, so that the words which were intended to be inserted between two of the printed lines were impressed in the carbon copy (which was used and signed as the original) partially above and upon one of them, while some x's which were intended to cross out some printed words were impressed slightly below the words sought to be eliminated, and the words, "Regent N. Dak.," which were intended to be inserted in a vacant space in the printed contract were impressed slightly below the line.

The original printed line was as follows:

One half of all crops raised each year at ——————, or such other place as may here—

Upon and slightly above the words, "one half of all crops raised each year at," and slightly above the blank line, and slightly above and upon the words, "or such other place," were impressed the words, "80 acres crops each year after the years described above 1914." Slightly below the words "one half" were impressed 6 x's, and slightly below the line in the vacant space were impressed the words, "Regent, N. Dak."

It is perfectly clear to us that the intention was to x or cross out the words, "one half," where they occurred at the beginning of the printed line, and to insert above these words the new words, "80 acres crops each year after the years described above 1914," then to follow with the printed words, "of all crops raised each year at," then to insert the words, "Regent, N. Dak.," in the blank space, and then to follow with the printed words, "or such other place as may here—."

No other reading, indeed, can be had without ignoring the x's beneath

the words, "one half," entirely, and the position of the words, "Regent, N. Dak." There can be no question that the words mentioned were intended to be inserted in the vacant space, nor that the words "one half" were intended to be erased. Such being the case, any other reading than that given by us would have to be, "all crops raised each year at Regent, N. Dak., 80 acres crop each year after the years described above 1914—or such other place as may hereafter, etc. This reading could surely never have been intended.

Another reason which leads us to the conclusion arrived at is that a subsequent clause of the contract provides that:

It is further agreed that in order to carry out the purpose and intent of the parties hereto, touching said first party ————————— receiving the full 80 of each crop, as hereinbefore set out, free and clear of all possible liens and encumbrances, after the year of 1914, it is especially and mutually understood, promised, and agreed that the party of the second part will execute and deliver to the party of the first part, a chattel mortgage on 80 acres of all crops to be sown, grown, and raised on said land and every part thereof, during the life of this contract.

Why, may we ask, if all the crops were to be delivered to the landlord before as well as after 1914, was not a chattel mortgage required before as well as after that date?

We can also well see why no share of the crops should have been demanded by the landlord during the first two years. The vendee, under the contract, was to break and backset 50 acres during the first year and 65 during the second. This would involve much labor and expense and materially increase the value of the land. It might very well have been that the vendor would have thought that this should be all that should be required of his vendee. Not only this, but the vendee was to pay the taxes.

The judgment of the District Court is reversed, and the cause is remanded with directions to modify the judgment so that "the whole of the $528.35" shall be awarded to the defendant Grimm and not merely $99.11 as heretofore ordered and adjudged.

On Petition for a Rehearing, Filed October 24, 1916.

BRUCE, J. The defendant and respondent has filed a petition for a rehearing in which he alleges:

1. That upon this appeal the evidence taken upon the trial of the cause was not brought into the record by a properly authenticated statement of the case; and that it is based entirely upon the judgment roll.

2. That upon the trial of the case below, the district court, in making its findings of fact and conclusions of law, had the aid of oral testimony, and was enabled to construe the crop-payment contract involved in the light of such testimony.

3. That, in the opinion written by this court, the crop payment contract is construed without the aid of the testimony adduced upon the trial, or a statement of the case of the proceeding below.

4. That in rendering such decision this court overlooked a principle well settled by the decisions of this state, viz. that where the sufficiency of the evidence to support the findings of the court cannot be considered because the appeal is based entirely upon the judgment roll proper, it will be presumed that the findings of the court are fully supported by competent evidence.

He cites as authority the case of Whitney v. Akin, 19 N. D. 638, 125 N. W. 470.

We have, however, no quarrel to find with that decision, nor with the rule contended for by the respondent that "where the sufficiency of the evidence to support the findings of the court cannot be considered because the appeal is based entirely upon the judgment roll, it will be presumed that the findings of the court are fully supported by competent evidence." This rule, however, applies merely to the findings of the fact, and not to the conclusions of law, and the presumption therefore is merely that the parol evidence, if any was introduced, sustains the findings of the trial court that the wording of the contract in question was as was given in the copy of the contract which was attached to and made a part of those findings. These findings of fact are conclusive upon us. The question then is one merely of law, and all we are asked to pass upon is whether the conclusion of law of the trial court, that is to say, the legal conclusion as to the meaning of the contract, was justified by the finding of fact as to what the words of the contract actual-

ly were.  We agree entirely with the learned trial judge as to what those words were.  We only differ with him in his legal conclusion.  The question presented to us is one of law and of law alone.  We see no reason for receding from our former position, and the petition for a rehearing is therefore denied.